UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY MILLMAN *and* JENNIFER MILLMAN,<br><br>*Plaintiffs*,<br><br>v.<br><br>ETHOS RISK SERVICES, LLC, THE LINCOLN NATIONAL LIFE INSURANCE COMPANY *d/b/a* LINCOLN FINANCIAL GROUP, EMPERION MCN *f/k/a* GENEX SERVICES, *and* JAMES A. CHARLES,<br><br>*Defendants*. | No. 24-CV-4370 (KMK)<br><br>OPINION & ORDER |

Appearances:

Matthew Henry Sheppe, Esq.
Reiss Sheppe LLP
New York, NY
*Counsel for Plaintiffs*

Jonathan Ohring, Esq.
Russell Marc Yankwitt, Esq.
Yankwitt LLP
White Plains, NY
*Counsel for Defendant Ethos Risk Services, LLC*

Eric Saul Strober, Esq.
Lauren E Russo, Esq.
Rivkin Radler LLP
Uniondale, NY
*Counsel for Defendant James A. Charles*

Ann-Martha Andrews, Esq.
Maynard Nexsen, Esq.
Phoenix, AZ
*Counsel for Defendant The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group*

Farrah Robyn Berse, Esq.
Maynard Nexsen, PC
New York, NY
*Counsel for Defendant The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group*

Christopher Benton Hopkins, Esq.
Hopkins PA
West Palm Beach, FL
*Counsel for Defendant Emperion MCN formerly known as Genex Services*

KENNETH M. KARAS, United States District Judge:

Jeffrey and Jennifer Millman (together, "Plaintiffs") bring this Action against Ethos Risk Services, LLC ("Ethos"), James A. Charles ("Dr. Charles"), The Lincoln National Life Insurance Company d/b/a Lincoln Financial Group ("Lincoln"), and Emperion MCN f/k/a Genex Services ("ECN) (together "Defendants"), alleging claims for defamation, prima facie tort, intentional infliction of emotional distress, negligent infliction of emotional distress, aiding and abetting, and violations of New York's General Business Law ("NY GBL") § 74. (*See generally* Third Am. Compl. ("TAC") (Dkt. No. 123).) Before the Court are Defendants' Motions to Dismiss the Third Amended Complaint ("TAC"). (S*ee* Ethos Mot. to Dismiss (Dkt. No. 126); Charles Mot. to Dismiss (Dkt. No. 128); Lincoln Mot. to Dismiss (Dkt. No. 131); ECN Not. of. Mot. (Dkt. No 125).) For the reasons set forth below, Defendants' motions are granted and Plaintiffs' claims are dismissed with leave to amend.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiffs' TAC and are assumed to be true for purposes of resolving the instant Motions.

1. Mr. Millman's Medical Condition

In or around October 2019, Mr. Millman suffered a cerebrospinal fluid leak ("CSF"), which caused him excruciating levels of pain, nausea, lightheadedness, blurry vision, and depression. (TAC ¶¶ 1, 18.) As a result of the CSF leak, he suffers from intracranial hypertension and chronic headaches, which "have frequently left and continue to leave [him] unable to sit upright or walk, in excruciating pain, and with blurred vision, head pain, and nausea." (*Id.* ¶ 1.) Because of his condition, Mr. Millman has not been able to work at his former employer, BNY Mellon, since October 2019. (*Id.* ¶¶ 17, 25.) Mr. Millman began receiving short-term disability benefits through BNY Mellon in October 2019 and long-term disability benefits in or about April 2020. (*Id.* ¶ 20.) BNY Mellon funded its plan through the purchase of a group policy of long-term disability insurance from Lincoln. (Lincoln Mem. of Law in Supp. of Mot. ("Lincoln Mem.") 5 (Dkt. No. 132).)

2. The Alleged Conspiracy to Deny Mr. Millman's Disability Claim

On or about March 13, 2023, Lincoln replaced the specialist handling Mr. Millman's claim with an individual named Casey Miranda, who determined in April 2023 that an independent medical exam ("IME") and surveillance of Mr. Millman were necessary to determine whether he was still disabled. (TAC ¶¶ 28, 32.)

a. Dr. Charles' First Evaluation

Lincoln hired ECN to find a doctor to perform an IME on Mr. Millman. (*Id.* ¶ 34.) ECN retained Dr. Charles, who agreed to review Mr. Millman's medical records and conduct an IME on June 2, 2023. (*Id.* ¶¶ 35, 38.) Following this examination, Dr. Charles sent a draft letter to ECN (the "First IME Opinion") in which Dr. Charles concluded that Mr. Millman could not

work an eight-hour day and that his complaints were substantiated by the medical evidence. (*Id.* ¶¶ 60–61.)

b. The Ethos Surveillance and Report

Lincoln also requested that Ethos, a licensed private investigator, perform surveillance of Mr. Millman to determine the legitimacy of his disability. (*Id.* ¶¶ 10, 41.) Lincoln requested surveillance of Mr. Millman at his son's Little League game on May 4, 2023. (*Id.* ¶ 42.) One of Ethos' investigators surveilled and took video footage of Mr. Millman at this game. (*Id.* ¶ 43.) Ethos provided Lincoln with the video footage and a report (the "First Ethos Report") summarizing the surveillance, which included observations that Mr. Millman left the game under his own power and "was observed walking with a limp." (*Id.* ¶¶ 45–46.)

c. Dr. Charles' Second Evaluation

On June 22, 2023, ECN sent Dr. Charles the First Ethos Report and video footage. (*Id.* ¶ 71.) On June 28, 2023, Dr. Charles sent ECN a letter (the "Second IME Opinion") in which he reversed several of his conclusions from the First IME Opinion. (*Id.* ¶ 83.) For instance, he opined in the new letter that Mr. Millman "can work in any capacity" and "can work an eight-hour day." (*Id.*)

3. The Denial of Mr. Millman's Benefits and Subsequent Appeal

Lincoln claimed that it sent letters with copies of the Second IME Opinion and an Ethos Surveillance Report to two of Mr. Millman's doctors on July 3, 2023. (*Id.* ¶ 86.) However, Lincoln sent one letter to an outdated address, and the other doctor could not find a record of receiving these materials from Lincoln. (*Id.* ¶¶ 87–88.) Lincoln thus received no response to its letters from Mr. Millman's doctors. (*Id.* ¶ 89.) Lincoln relied upon the Second IME Opinion to deny Mr. Millman's disability benefits on July 25, 2023. (*Id.* ¶ 89.)

Upon learning that his disability benefits were denied, Mr. Millman immediately sought copies of the Ethos Report and video footage. (*Id.* ¶ 104.) Lincoln sent him the edited video footage and a second report by Ethos dated June 6, 2023 (the "Second Ethos Report"). (*Id.* ¶ 105.) Mr. Millman hired an expert to review the video footage, who determined it had been selectively redacted. (*Id.* ¶¶ 112–115.) Mr. Millman appealed his disability benefits determination in January 2024. (*Id.* ¶ 127.) As part of this process, Lincoln had a different doctor review Mr. Millman's file as well as the Second IME opinion, the Ethos Report, and the edited video footage. (*Id.* ¶ 128.) The doctor found Mr. Millman was disabled and noted the surveillance was consistent with the conclusion that Mr. Millman was disabled. (*Id.* ¶ 129.)

Mr. Millman has experienced severe emotional distress following this episode due to fears that he will be followed or surveilled and his disability benefits will be taken away. (*Id.* ¶ 123.) He suffered increased physical and emotional pain after the video evidence was used to deny his benefits, leading to a stay in the Mayo Clinic, an increase in his medications, and exacerbation of his post-traumatic stress disorder. (*Id.* ¶ 125.) Mr. Millman alleges that the "unrelenting and intolerable" stress brought on by these events has led to "worsening headaches, increase in prescription drug usage, lack of sleep, and overwhelming financial concerns." (*Id.*) During the appeals process, Mrs. Millman stopped working because she had to work on the appeal and take care of Mr. Millman and their children. (*Id.*) Mr. Millman also took out loans, costing him $31,000 in interest, to offset the loss of income from the disability coverage. (*Id.*)

Millman's appeal of his benefits denial was ultimately successful, and his benefits were reinstated on March 12, 2024. (*Id.* ¶ 130.)

B. Procedural Background

Plaintiffs filed their initial Complaint against Ethos on June 7, 2024. (*See* Compl. (Dkt. No. 1).) On March 12, 2025, Plaintiffs filed their First Amended Complaint adding Dr. Charles and Lincoln as defendants. (*See* First Am. Compl. ("FAC") (Dkt. No. 67).) On April 10, 2025, Plaintiffs filed their Second Amended Complaint adding ECN as a defendant. (*See* Second Am. Compl. "SAC" (Dkt. No. 88).) On September 19, 2025, Plaintiffs filed their Third Amended Complaint (*See* Third Am. Compl. "TAC" (Dkt. No. 123).)

On November 7, 2025, Defendants filed their Motions to Dismiss. (*See* ECN Not. of Mot. (Dkt. No. 125); ECN Mem. of Law. in Supp. of Mot. ("ECN Mem.") (Dkt. No. 124); Ethos Mot. to Dismiss the TAC (Dkt. No. 126); Ethos Mem. of Law. in Supp. of Mot. ("Ethos Mem.") (Dkt. No. 127); Charles Mot. to Dismiss the TAC (Dkt. No. 128); Charles Mem. of Law. in Supp. of Mot. ("Charles Mem.") (Dkt. No. 130); Lincoln Mot. to Dismiss the TAC (Dkt. No. 131); Lincoln Mem. of Law. in Supp. of Mot ("Lincoln Mem.") (Dkt. No. 132).)

On January 9, 2026, Plaintiffs filed their Opposition to Defendants' Motions, (*see* Pls.' Mem. in Opp'n ("Pls.' Opp'n") (Dkt. No. 135)), as well as a Declaration by Jeffrey Millman ("Millman Decl.") in support of the Opposition, (*see* Millman Decl. (Dkt. No. 136)). On February 6, 2026, ECN replied to Plaintiffs' Opposition. (*See* ECN Reply Mem. of Law. in Supp. of Mot. ("ECN Reply") (Dkt. No. 141).) On February 9, 2026, Lincoln, Charles, and Ethos replied to Plaintiffs' Opposition. (*See* Lincoln Reply Mem. of Law. in Supp. of Mot. ("Lincoln Reply") (Dkt. No. 142); Charles Reply Mem. of Law. in Supp. of Mot. ("Charles Reply") (Dkt. No. 143); Ethos Reply Mem. of Law. in Supp. of Mot. ("Ethos Reply") (Dkt. No. 144).)

## II. Discussion

### A. Standard of Review

Defendants move to dismiss the TAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B. Analysis

1. ERISA Preemption

A threshold question is whether Plaintiffs' claims are preempted by ERISA.

a. Statutory Background

In enacting ERISA, Congress "'protect[ed] . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and . . . 'provid[ing] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). "Section 502(a)(1)(B) of ERISA provides participants or beneficiaries

with a civil remedy to recover benefits due under their plans, to enforce rights under their plans, or to clarify rights to future benefits under their plans." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299 (2d Cir. 2012) (citing 29 U.S.C. § 1132(a)). "Section 502(a) provides, among other things, that a plan participant or beneficiary may bring an action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]'" *Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016) (quoting 29 U.S.C. § 1132(a)(1)(B)). ERISA also includes "expansive preemption provisions" meant "[t]o establish a 'uniform regulatory regime over employee benefit plans,'" and "'to ensure that employee benefit plan regulation [is] exclusively a federal concern.'" *Id.* (quoting *Davila*, 542 U.S. at 208). Specifically, ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

There are "two separate, but related, doctrines of preemption applicable to ERISA": complete preemption and express preemption. *Chau*, 167 F. Supp. 3d at 570. Complete preemption bears on whether a state law claim *may* be adjudicated as a federal question, while express preemption addresses whether a state law claim *may not* be sustained because it is superseded by ERISA. "'Complete preemption' can properly be described as a jurisdictional concept," *id.*, because it allows for "a plaintiff's state cause of action [to] be recast as a federal claim for relief, making its removal by the defendant proper on the basis of federal question jurisdiction," *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (internal quotations omitted and alterations adopted). Lincoln asserts, and the Court agrees, that "[c]omplete preemption is irrelevant here because Millman filed suit in this Court [] invoking diversity jurisdiction." (Lincoln Reply 6; TAC ¶ 14.)

Thus, the question is whether these claims are expressly preempted under ERISA. Express preemption is one of "'three familiar forms' of ordinary defensive preemption (along with conflict and field preemption)." *Wurtz*, 761 F.3d at 238 (quoting *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005)). "It occurs when 'Congress . . . withdraw[s] specified powers from the States by enacting a statute containing an express preemption provision.'" *Id.* (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). As courts have explained, "ERISA § 514(a) states that it shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. Thus, a claim is preempted if it relates to the plan, or involves the issue of a member[']s rights or benefits under a plan." *Conn. Gen. Life Ins. Co. v. Advanced Chiropractic Healthcare*, 54 F. Supp. 3d 260, 264–65 (E.D.N.Y. 2014) (internal quotation marks omitted); *see also Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) ("A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.") (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)); *Wurtz*, 761 F.3d at 240 (recognizing that "ERISA expressly preempts any state law that relates to any employee benefit plan" (alterations and internal quotation marks omitted)).

Express preemption does not turn on the "characterization of [the] cause[s] of action by the [P]laintiff[s]," but rather whether "analysis of the cause of action will necessarily require the [C]ourt to examine the claims processes and how they were implemented by Defendant[s]." *Sasson Plastic Surgery, LLC v. UnitedHealthcare of New York, Inc.*, No. 17-CV-1674, 2021 WL 1224883, at *11 (E.D.N.Y. Mar. 31, 2021), *recon. granted in part on other grounds*, 2022 WL 2664355 (E.D.N.Y. Apr. 26, 2022). "[A] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Chau*, 167 F.

Supp. 3d at 271 (quotation marks omitted). A claim is an alternative enforcement mechanism to ERISA if it "implicate[s] the plan administrator's fiduciary conduct," that is, if "the behavior was undertaken . . . in the course of carrying out [] plan responsibilities." *Allen v. Unum Life Ins. Co. of Am.*, No. 15-CV-219, 2015 WL 5560072, at *3 (E.D. Va. Sept. 17, 2015) (alteration adopted). "What triggers ERISA preemption is . . . an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146–47 (2d Cir. 1989).

The Second Circuit has elucidated different standards for ERISA preemption of state statutory claims and common law claims.

> As to state statutory claims, ERISA preempts those that 'provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee.' As to state common law claims, ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'

*Paneccasio*, 532 F.3d at 114 (citations omitted).

Lincoln argues that ERISA preempts the claims against it because they "relate to the employee benefit plan" insofar as "Millman's only relationship with Lincoln is as a participant in the ERISA-governed Plan" and "all of the allegedly wrongful conduct occurred as a part of [the] administration of [Millman's] governed claim." (Lincoln Mem. 14.) Plaintiffs contend that the claims are not preempted because, rather than seeking to "enforce [their] rights under the terms of the plan" or "clarify [their] rights to future benefits under the terms of the plan," they are "seek[ing] damages for independent torts." (Pls.' Opp'n. 21.) Additionally, they argue ERISA does not preempt their claims because the damages sought are "not payable from plan assets and do not require [the] [C]ourt to interpret the terms of the [] plan." (*Id.* 22.)

The Court will analyze ERISA's preemptive effect on each claim in turn.

b. Defamation

Plaintiffs bring defamation claims against all four Defendants. Their defamation claims against Ethos relate to the alleged "misleadingly edited" surveillance video of Mr. Millman and the accompanying First and Second Ethos Reports. (TAC ¶ 149.) Plaintiffs' defamation claims against Dr. Charles, Lincoln, and ECN relate to the allegedly false alterations to Dr. Charles' June 28, 2023 letter (the Second IME Opinion), in which he stated that his medical opinion of Mr. Millman was that he was not disabled. (TAC ¶¶ 78, 169, 214, 244.)

The video, Ethos reports, and Dr. Charles' Second IME Opinion were all used to determine that Mr. Millman was no longer due benefits under the plan. (TAC ¶¶ 78, 79, 89.) The underlying defamatory materials thus "relate to" the ERISA-covered plan in that they are "premised on [Lincoln's] denial of [Mr. Millman's] benefits under the Plan." *Chau*, 167 F. Supp. 3d at 571.

Plaintiffs argue that the claims are not preempted because they do not seek to enforce their rights under the terms of the plan. (Pls.' Opp'n 21.) But courts do not take such a narrow approach to the express preemption doctrine. Rather, state common law claims are preempted where they essentially seek recourse for improper processing of benefits—even if the claims seek remedies beyond the terms of the plan—because such recourse has been expressly provided for through ERISA's appeals provisions. *See* 29 C.F.R. § 2560.503-1(h) (providing for appeals of adverse benefit determinations); *see also Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, No. 23-CV-1134, 2024 WL 2813721, at *2 (2d Cir. June 3, 2024) (summary order) ("ERISA also preempts state common law claims that seek to rectify 'alleged improper processing of a claim for benefits under ERISA-regulated plans." (quoting *Pilot Life Ins. Co. v.*

*Dedeaux*, 481 U.S. 41, 47–48 (1987))); *Rau v. Hartford Life & Acc. Ins. Co.*, No. 11-CV-1772, 2012 WL 3727593, at *2 (D. Conn. May 11, 2012) ("Generally, laws that provide an alternative cause of action to employees to collect benefits protected by ERISA, including common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA-covered benefit program[,] are preempted. A claim may be preempted even where it allows additional remedies beyond those authorized by section 1132(a).") (internal quotation marks omitted). Here, the defamatory statements are not alleged to have been made to any other person other than Lincoln or those persons retained by Lincoln to investigate the claim. (TAC ¶¶ 150, 171, 214, 245.) As such, the defamation claim is merely an "alternative remedy for [Lincoln's] termination of [the] benefits." *Chau*, 167 F. Supp. 3d at 573; *see also id.* ("The false and slanderous remarks . . . were all passed on by Hartford to people and entities who appear to have been hired by or on behalf of Hartford to investigate Dr. Chau's claims, in connection with their review of her claimed benefits under the Plan."); *see also Allen*, 2015 WL 5560072, at *3 (finding defamation claim premised on the defendant's "fiduciary conduct during the claim review process" preempted because it was asserted as an "alternative enforcement mechanism" to ERISA); *Puccio v. Standard Ins. Co.*, No. 12-CV-4640, 2013 WL 1411155, at * 5 (N.D. Cal. Apr. 8, 2013) (finding defamation claim preempted by ERISA where "the alleged statements were made during an examination conducted as part of the plan's claim review" and were "made with the intention of interfering with [the plaintiff's] attainment of benefits under the plan"); *Thomas v. Telemecanique, Inc.*, 768 F. Supp. 503, 506 (D. Md. 1991) (finding defamation claim expressly preempted because it was "so intertwined" with the ERISA plan). Put another way, Mr. Millman availed himself of the appeals procedure and successfully got his benefits reinstated. (TAC ¶ 130.) To permit the Plaintiffs to bring state law claims premised, in function

if not in form, on the wrongful benefits denial would be to impermissibly interfere with the administrative process for appeal and remedies contemplated by ERISA's regulatory scheme. *See Chau*, 167 F. Supp. 3d at 573 ("[The plaintiff] seeks to avoid the exclusive remedy provided by ERISA, by claiming that the exchange of any false information in the course of a benefits analysis among those involved in the analysis gives rise to an independent state law claim of defamation. This would undermine the comprehensive remedial scheme implemented by Congress in ERISA.").

It is true that most of the claims in *Chau* sought restoration of the plaintiff's benefits under the plan, *Chau*, 167 F. Supp. 3d at 571–2, while Mr. Millman is not seeking restoration of his benefits, as they have already been restored through the benefits appeal process, (TAC ¶ 130). But Plaintiffs' defamation claims "seek damages for the consequences of the termination decision," *Chau*, 167 F. Supp. 3d at 572, because they seek reimbursement for costs of investigating and appealing the denial or damages pertaining to secondary effects of the denial of benefits, (*see, e.g.*, TAC ¶¶ 125.a.i (seeking reimbursement for cost to analyze the doctored video footage); 125.a.ii (seeking legal fees for appeal of denial of disability benefits); 125.a.iii (seeking Mrs. Millman's lost earnings for having to take care of Mr. Millman and the children due to the disability benefit denial); 125a.iv (seeking interest on loans Mr. Millman needed to offset loss of income from benefits) 125.b.vii (seeking damages for increased physical and emotional pain due to the video providing the basis for denial of insurance benefits)). Thus, Plaintiffs' attempt to distinguish *Chau* fall short. *See Bailey-Gates v. Aetna Life Ins. Co.*, 890 F. Supp. 73, 78 (D. Conn. 1994) (explaining that claims "seek[ing] damages which arise out of the impropriety of [a] defendant's decision to deny benefits . . . must be preempted" by ERISA).

This case is also distinguishable from *Stevenson*, which Plaintiffs argue supports them, (*see* Pls.' Opp'n 20, 24), where the plaintiff's claims were based on a promise that certain ERISA-covered benefits would remain intact following a job change, *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 58 (2d Cir. 2010). In *Stevenson*, the resolution of the state law claims would not have "require[d] a court to review the propriety of an administrator's . . . determination of benefits under [an ERISA] plan" because the claims "derive[d] from [the employer's] promise rather than from an ERISA benefits plan," 609 F.3d at 61, but here, whether the defamatory statements were false would necessarily demand an inquiry into the process used to terminate Mr. Millman's benefits. Determining damages would likewise necessitate an examination of how much these allegedly defamatory materials factored into the determination decision. It would be different, for instance, if Mr. Millman claimed that one of the defendants had published the doctored video on social media or to another third party not involved in the benefits analysis. *See Chau*, 167 F. Supp. 3d at 573 (noting that the defamation claim was preempted because the "complaint [did] not allege that the statements were made to any other person"). In such a case, the defamation would have had nothing to do with the processing of the benefit claims, and thus there would be "a narrow ground" on which the defamation claims "could be resolved without constraining the administration of the benefit plans." *Ferrara v. Leticia, Inc.*, No. 09-CV-3032, 2012 WL 4344164, at *8 (E.D.N.Y. Sept. 21, 2012). But Mr. Millman has alleged no such thing, and thus the defamation claims are preempted by ERISA.

c. Prima Facie Tort

Plaintiffs bring prima facie tort claims against Ethos and Dr. Charles for the following conduct:

- Ethos' alleged misconduct in preparing the Ethos report and video, including preparing a fraudulent report, selectively editing the video

footage, failing to have an investigator sign the report, and subsequently denying the misleading nature of the Report and video. (TAC ¶¶ 132–135.)

- Dr. Charles' June 28, 2023 letter changing his opinion regarding Mr. Millman's disability and his alleged failure to review all of Mr. Millman's medical records and the video. (*Id.* ¶ 176.)

Like the defamation claims, the prima facie tort claims all concern conduct which is inextricably intertwined with the benefits analysis process. And, like the defamation claims, this is fatal to the Plaintiffs' claims because to determine whether Ethos' and Dr. Charles' alleged conduct was wrongful, the Court would necessarily need to "examine the claims processes and how they were implemented by Defendant[s]." *Sasson Plastic Surgery*, 2021 WL 1224883, at *11. These claims are likewise preempted under ERISA.

d. Aiding and Abetting

Plaintiffs bring aiding and abetting claims against all four Defendants for the following conduct:

- Against Dr. Charles for allegedly providing assistance to Lincoln and ECN's tortious acts by "agreeing to change the findings of his independent medical exam." (TAC ¶ 201.)
- Against Lincoln for "provid[ing] substantial assistance to ECN and Dr. Charles['] tortious conduct by purposely only providing them with the First Ethos Report and edited video footage." (*Id.* ¶ 209.)
- Against ECN for assisting in Lincoln's tortious conduct "by pressuring Dr. Charles to change the findings of his 'independent' medical exam" and telling "Dr. Charles to only review one-half of Mr. Millman's medical records." (*Id.* ¶¶ 261–62.)
- Against Ethos for assisting Lincoln's tortious conduct "by intentionally doctoring its videotape and editing its report provided to Lincoln to purport to show that Mr. Millman was not disabled." (*Id.* ¶ 268.)

For each of these claims, the allegedly wrongful conduct pertains to either the doctored videotape and accompanying Ethos report or Dr. Charles' allegedly deficient medical exam. Like the preceding claims, because these materials were allegedly wrongfully used to deny Mr. Millman his benefits, these claims "concern[] the conduct of a fiduciary and third parties in

relation to the plan" and are therefore preempted by ERISA. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1992), *abrogated on other grounds by Gerosa v. Savasta & Co., Inc.,* 329 F.3d 317 (2d Cir. 2003); *see also Melito v. Royal Bank of Canada*, No. 24-CV-5061, 2025 WL 919639, at *4 (S.D.N.Y. Mar. 26, 2025) (holding claims for fraud, conspiracy to commit fraud, and aiding and abetting fraud premised on "scheme by [the d]efendants to deny coverage under the [p]lan" were preempted because they "center[ed] around the alleged wrongful denial of [the plaintiff's] ERISA-governed [d]isability [c]laim," but claim for tortious interference based on the defendants' alleged "interfere[nce] with [the p]laintiff's attempts to secure future employment" was not preempted because it did not relate directly to the plan); *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 409 (S.D.N.Y. 2009) (concluding fraud and fiduciary duty claims premised on defendants' "knowingly issu[ing] false and misleading oral and written representations" to beneficiaries selecting their plan options were preempted because they "directly relate[d] to plaintiffs' employee benefit plans").

e. Intentional Infliction of Emotional Distress

Plaintiffs bring three claims for intentional infliction of emotional distress pertaining to the following conduct:

- Against Ethos for "(i) creating the Report and edited video footage; and ii) steadfastly refusing to admit the Report was misleading and the video footage edited." (TAC ¶ 142.)
- Against Dr. Charles' for "changing his medical opinion to find Mr. Millman not disabled when he knew Mr. Millman, was, in fact, disabled." (*Id.* ¶ 185.)
- Against Lincoln for "[e]ngineering Ethos' surveillance of Mr. Millman"; "doctoring the video footage and report of that surveillance"; "making Mr. Millman afraid to leave his house"; "[c]ontinued surveillance of Mr. Millman even after being made aware of Ethos' misconduct"; "[h]aving Dr. Charles change his opinion on Mr. Millman being disabled"; "[p]urposefully ignoring reports of Mr. Millman's pain and disability in order to find that he was not disabled;" "[s]ending the First Ethos Report to Dr. Charles and ECN, but sending the Second Ethos Report, which was different than the first, only to Mr. Millman"; and "[c]laiming to have requested that Mr. Millman's doctors review

Dr. Charles' Second IME Opinion" when in fact Lincoln had not sent the opinion to Mr. Millman's doctors. (*Id.* ¶ 229.)

Again, the core conduct alleged to constitute intentional infliction of emotional distress pertains to the improper eligibility evaluation by "entities who appear[ed] to have been hired by or on behalf of [Lincoln] to investigate [the disability claims]." *Chau*, 167 F. Supp. 3d at 572. For the same reason that the preceding claims are preempted, so too are the claims of intentional infliction of emotional distress. *See Jones v. UNUM Provident Ins.*, No. 06-CV-1427, 2007 WL 2609791, at *7 (N.D.N.Y. Sept. 5, 2007) (dismissing IIED claims that were based on denial of the plaintiff's claim for plan benefits); *Cmty. Gen. Hosp., Inc. v. Zebrowski*, No. 03-CV-0249, 2004 WL 1769102, at *8 (N.D.N.Y. Aug. 2, 2004) (dismissing state law IIED claims for denial of benefits as preempted under ERISA); *cf. Donohue v. Teamsters Loc. 282, Welfare, Pension, Annuity, Job Training & Vacation & Sick Leave Tr. Funds*, 12 F. Supp. 2d 273, 281 (E.D.N.Y. 1998) (finding an IIED claim not preempted by ERISA where the defendant threatened and intimidated the plaintiff to dissuade her from "disclosing alleged improprieties in the operation of the [plan] funds" because claim was "personal to [the] plaintiff" rather than intertwined with the plan).

f. Negligent Infliction of Emotional Distress

Plaintiffs also alternatively plead that Ethos, Dr. Charles, Lincoln, and ECN committed negligent infliction of emotional distress for the following conduct:

- Ethos for "dishonestly prepar[ing] a report and video footage designed to make Mr. Millman's disability claim appear fraudulent." (TAC ¶ 156.)
- Dr. Charles for "dishonestly issu[ing] his June 28, 2023, letter opining that Mr. Millman was not disabled." (*Id.* ¶ 192.)
- Lincoln for "improperly pressur[ing] and conspir[ing] with ECN and Dr. Charles to have Dr. Charles issue his Second IME Opinion" and "improperly conspir[ing] with Ethos to surveil Mr. Millman." (*Id.* ¶ 237.)

- ECN for "improperly pressur[ing] Dr. Charles into issuing his June 28, 2023, letter" and [telling] Dr. Charles to only review one half of Mr. Millman's medical records." (*Id.* ¶¶ 251–252.)

Again, all of the conduct alleged here pertains to the improper investigation and processing of Mr. Millman's disability claim and is preempted by ERISA for the same reasons as Plaintiffs' other common law causes of action. *See Miller v. Int'l Paper Co.*, No. 12-CV-7071, 2013 WL 3833038, at *13 (S.D.N.Y. July 24, 2013) (holding that "[b]ecause [the plaintiff's] claims for negligent and intentional infliction of emotional distress arise solely from the alleged denial of retirement benefits, they are clearly preempted by ERISA" where claims were premised on forfeiture of benefits due to misrepresentations by the plaintiff's employer); *see also Danca v. Priv. Health Care Sys., Inc.*, 185 F.3d 1, 7 (1st Cir. 1999) (dismissing claims of NIED as preempted by ERISA § 514 because they were related to training and supervision for plan certification process).

g. N.Y. GBL § 74

Finally, Plaintiffs claim that Ethos violated New York's General Business Law § 74 when it "fraudulent[ly] prepar[ed] the Report and video footage in order to cause Mr. Millman to lose his disability benefits." (TAC ¶¶ 164–65.) New York's General Business Law ("N.Y. G.B.L.") provides for "civil recovery for willful or malicious conduct by detective agencies." *Burwell v. Dean Witter Reynolds, Inc.*, No. 23753/88 002, 1990 WL 308123, at *2 (N.Y. Sup. Ct. May 24, 1990). Plaintiff seeks to recover against Ethos on the $10,000 bond it is required to post under New York law. (TAC ¶ 163.)

"ERISA preempts [state statutory claims] that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." *Paneccasio*,

532 F.3d at 114 (internal quotations omitted). There are, to date, no cases construing whether claims under N.Y. G.B.L. § 74 are preempted by ERISA. While the statute itself does not refer to ERISA plans, the relevant inquiry is whether the *claim* relates to an ERISA plan. *See Gardner v. Verizon Commc'ns Inc.*, No. 16-CV-814, 2017 WL 1047331, at *4 (E.D.N.Y. Mar. 17, 2017) (finding claims brought "pursuant to New York's General [Business] Law § 349," which relates to unfair, deceptive, or abuse acts and practices in trade, were preempted because "the state claim relates to [defendant's] alleged termination of the ERISA plan and denial of the ERISA plan's benefit").

Here, Plaintiffs allege Ethos engaged in "willful [and] malicious" behavior consisting of its "fraudulent preparation of the Report and video footage in order to cause Mr. Millman to lose his disability benefits." (TAC ¶ 165.) Like the other claims, this claim is "premised on the . . . denial of benefits under th[e ERISA plan]" because the underlying conduct pertains to the allegedly improper investigation and processing of Mr. Millman's disability benefits. *Paneccasio*, 532 F.3d at 114. Therefore, this claim is preempted under ERISA.

While Lincoln is the only defendant to raise the preemption argument, the state law claims against all defendants must be dismissed because they "seek to rectify alleged improper processing of a claim for benefits under ERISA-regulated plans" and are therefore preempted by ERISA. *Park Ave. Podiatric Care, P.L.L.C.*, 2024 WL 2813721, at *2 (quotation marks omitted). "[A] court may sua sponte dismiss state law claims that are preempted by ERISA." *Davidoff v. Vanguard Grp., Inc.*, No. 22-CV-5329, 2024 WL 4648169, at *4 (E.D.N.Y. Jan. 31, 2024), *report and recommendation adopted* (E.D.N.Y. Mar. 25, 2024); *see also Evolution Fast Food Gen. P'ship v. HVFG, LLC*, No. 15-CV-6624, 2018 WL 1779377, at *3 n.1 (S.D.N.Y. Mar. 28, 2018) (collecting cases for the "proposition that a court may address issues of

preemption when a [c]omplaint invokes interlocking state and federal statutes" sua sponte); *Sheet Metal Workers' Nat. Pension Fund v. AUL Sheet Metal Works Inc.*, No. 10-CV-1371, 2012 WL 32237, at *5 (S.D.N.Y. Jan. 5, 2012) ("sua sponte dismiss[ing]" claim because "ERISA preempts state law causes of action like this one"); *Burgie v. Euro Brokers, Inc.*, 482 F. Supp. 2d 302, 308 (E.D.N.Y. 2007) (same). As previously noted, the state law claims against each Defendant are premised on the same set of facts pertaining to the allegedly improper processing of Millman's claim. *See supra* Sections II.B.1.a–f. Therefore, the preemptive effect of ERISA on each claim is the same regardless of whom the claim has been brought against. Accordingly, the court "sua sponte dismiss[es]" each state law claim against the non-Lincoln defendants as preempted by ERISA. *Davidoff*, 2024 WL 4648169, at *4.

2. Leave to Amend

The final issue before the Court is whether to grant Plaintiffs leave to amend their complaint a fourth time. Federal Rule of Civil Procedure 15 supplies the legal standard applicable to a motion to amend a complaint. Rule 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed. R. Civ. P. 15(a)(2). However, "it is within the sound discretion of the district court to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (noting that a court should deny leave to amend "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party" (citing *Foman*, 371 U.S. at

182)). However, "[o]utright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman*, 371 U.S. at 182). "To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." (citation omitted)). Additionally, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In Opposition to Defendants' Motions to Dismiss, Plaintiffs request leave to amend the complaint to incorporate the factual allegations set forth in the Millman Affidavit. (Pls.' Opp'n 106.) Because the Court rests its holding on the fact that Plaintiffs' claims are preempted by ERISA, rather than insufficiently pled, amendment would be futile unless Plaintiffs can allege facts pointing to wrongful conduct by the Defendants arising outside of the context of the disability benefits determination.

Most of the Millman Declaration is devoted to bolstering the factual allegations with respect to the alleged improper investigation and processing of his disability benefits claim. (*See, e.g.*, Millman Decl. ¶¶ 12–15, 18–19 (adding factual allegations pertaining to Ethos' video surveillance and Dr. Charles' IME report).) There are, however, a few additional allegations pertaining to conduct following both the reinstatement of Mr. Millman's benefits and the filing of this case. For example, Mr. Millman attests that "private investigators have continued to surveil [himself] and [his] family," and that one of these individuals claims to work for Ethos. (Millman Decl. ¶¶ 26–27.) He also attests that his computer was hacked and that he "believe[s]

this hacking was related to Defendants' surveillance and harassment." (Millman Decl. ¶ 28.) These allegations point to conduct falling outside of the benefits analysis process because they are alleged to have taken place following the filing of this case and purportedly unrelated to the denial of his benefits.

As Ethos points out, Plaintiffs fail to explain how these new facts might bolster their legal theories or avoid ERISA preemption, which hinders the Court's ability to evaluate the futility of amendment. (Ethos Reply 21.) "A plaintiff need not be given leave to amend if it fails to specify . . . to the district . . . how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). However, the Court recognizes that the majority of the briefing in this case has been dedicated to the substantive adequacy of Plaintiffs' pleadings, rather than the issue of whether Plaintiffs allege sufficient facts to bring any of their claims outside of the preemptive ERISA context. While the allegations in the Millman Declaration, as such, may not be sufficient to survive a motion to dismiss, Plaintiffs, guided by the Court's present decision, may be able to add factual allegations rendering them sufficient under Rule 12(b)(6). And while Defendants urge the Court to deny leave to amend because "[P]laintiffs ha[ve] already had the opportunity to amend [their] complaint multiple times," (*see* Charles Reply 13; *see also* Ethos Reply 21; ECN Reply 12), they fail to establish how they would be prejudiced by further amendment.

Therefore, given the context in which the Court dismisses Plaintiffs' claims, justice requires that Plaintiffs be given leave to cure this deficiency and plead facts, to the extent they exist, alleging wrongful conduct outside the benefits analysis process.

III. Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss are granted. Plaintiffs' claims are dismissed in their entirety without prejudice, and Plaintiffs are granted leave to amend their Complaint within 30 days of this Opinion. The Clerk of Court is respectfully directed to terminate the pending Motions at Dkt. Nos. 126, 128, and 131.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge